1
2                                                                              O
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                    CENTRAL DISTRICT OF CALIFORNIA
9
10  DAVID HODGES,                          )   NO. CV 13-03215-MAN
11              Plaintiff,                  )
                                           )
12          v.                             )   MEMORANDUM OPINION
                                           )
13  CAROLYN W. COLVIN,                     )   AND ORDER
    Acting Commissioner of Social          )
14  Security,                              )
                                           )
15              Defendant.                 )
16  _____    )
17
18                          INTRODUCTION
19
20          Plaintiff filed a Complaint on May 13, 2013, seeking review of the denial of plaintiff's
21  application for disability insurance benefits ("DIB") and supplemental social security income
22  ("SSI").  On June 18, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed
23  before the undersigned United States Magistrate Judge.  (Dkt. Nos. 7, 9.)  On April 10, 2014, the
24  parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the
25  Commissioner's decision and ordering the payment of benefits.  (Joint Stip. at 39.)  The
26  Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the case be
27  remanded for further proceedings.  (*Id*. at 40)  The Court has taken the matter under submission
28

without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 5, 2010, plaintiff, then 55 years old,[1] applied for a period of disability, DIB, and SSI.  (Administrative Record ("A.R.") 142, 146.)  This was plaintiff's fourth application for DIB.  (A.R. 54.)  The Commissioner denied plaintiff's three prior applications.  (*See id.*)

Plaintiff alleged disability commencing August 1, 2009, due to thyroid, kidney, skin, and back problems as well as high blood pressure.  (A.R. 84, 142, 146.)  Plaintiff had previously worked as a health care companion, a landscape laborer, and as a warehouse worker.  (*Id.* 21, 31-33, 40-43.)

The Commissioner denied plaintiff's application initially (A.R.84-88) and on reconsideration (A.R. 92-97).  On April 18, 2011, plaintiff requested a hearing.  (A.R. 98-99.)  On March 26, 2012, plaintiff, who was represented by counsel, testified before Administrative Law Judge John C. Tobin ("ALJ").  (A.R. 27-52.)  Randi Langford-Hetrick, a vocational expert ("VE"), also testified.  (*Id.* 40-51.)  On March 30, 2012, the ALJ issued an unfavorable decision denying plaintiff's claims for DIB and SSI.  (*Id.* 15-21.)  On February 22, 2013, the Appeals Council denied plaintiff's request for review.  (*Id.* 6-8; *see also id.* 1.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity from his amended onset date of September 17, 2010.  (A.R. 17.)  The ALJ determined that plaintiff had the severe medically determinable impairments of: a back disorder; arthritis; asymptomatic

---

[1]  Plaintiff was born on September 14, 1955.  (A.R. 142.)

1  Grave's disease; depression, stable. (*Id.*)  The ALJ also concluded that plaintiff's impairments do
2  not satisfy the requirements of a listed impairment in 20 C.F.R. part 404, subpart P, appendix 1
3  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.* 17-18.)
4
5  The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform
6  "light work" in the "unskilled to lower range of semi-skilled work." (A.R. 18.)  The ALJ concluded
7  that plaintiff was able to perform his past relevant work as a companion (DOT 309.677-010) and
8  landscape laborer (DOT 408.687-014). (*Id.* 21.)  Accordingly, the ALJ found that plaintiff was not
9  disabled. (*Id.*)
10
11                                      **STANDARD OF REVIEW**
12
13  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine
14  whether it is free from legal error and supported by substantial evidence in the record as a whole.
15  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere
16  scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might
17  accept as adequate to support a conclusion.'"  Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519,
18  522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to
19  more than one rational interpretation, we must uphold the ALJ's findings if they are supported by
20  inferences reasonably drawn from the record."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.
21  2012).
22
23  Although this Court cannot substitute its discretion for that of the Commissioner, the Court
24  nonetheless must review the record as a whole, "weighing both the evidence that supports and
25  the evidence that detracts from the [Commissioner's] conclusion."  Lingenfelter v. Astrue, 504
26  F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v.
27  Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for
28  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

1  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

2

3       The Court will uphold the Commissioner's decision when the evidence is susceptible to
4  more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).
5  However, the Court may review only the reasons stated by the ALJ in his decision "and may not
6  affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; see also Connett
7  v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not reverse the Commissioner's
8  decision if it is based on harmless error, which exists only when it is "clear from the record that
9  an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc.
10 Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d
11 1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th
12 Cir. 2008).

13

14                                    **DISCUSSION**

15

16      Plaintiff alleges two sources of error.  First, plaintiff claims that the ALJ did not properly
17 assess plaintiff's ability to perform his past relevant work.  (Joint Stip. at 5-11.)  Second, plaintiff
18 contends that the ALJ did not properly credit plaintiff's testimony about the severity and limiting
19 effects of his symptoms.  (Id. at 5, 19-30.)

20

21      **I.    The ALJ Properly Evaluated Plaintiff's Ability To Perform His Past Relevant**
22            **Work.**

23

24      At the March 26, 2012 hearing, plaintiff testified that his prior work experience included
25 working for a lawn care business as an independent contractor (A.R. 31-33, 44) and performing
26 home health care as a companion for his brother (A.R. 42-43, 50).  According to plaintiff's
27 testimony, he held each job for no more than six months.  (See id. 33, 49, 50.)  The VE testified
28 that a hypothetical individual of plaintiff's age, education, and vocational background, who is

                                         4

1    limited to light work in the unskilled to lower semiskilled range, could perform plaintiff's past

2    relevant work as both a companion and a landscape laborer. (*Id.* 19-20.) The ALJ accepted the

3    VE's testimony in full. (*See id.* 21.)

4

5         Plaintiff contends that the ALJ erred in identifying his work as a companion and landscape

6    laborer as "past relevant work" for the purposes of step four of the analysis, because plaintiff did

7    not perform either job "at the substantial gainful activity level." (Joint Stip. at 7-9 (citing SSR 82-

8    62 and 20 C.F.R. §§ 404.1574, 416.965).) Past relevant work is work that:  was done within the

9    last 15 years; lasted long enough for the claimant to learn how to do it; and was substantial

10   gainful activity.  20 C.F.R. §§ 404.1565(a), 416.965(a).  The regulations define substantial gainful

11   activity ("SGA") as work activity that "involves doing significant physical or mental activities" on

12   a full-or part-time basis and "is the kind of work usually done for pay or profit."  *Id.* §§ 404.1572,

13   416.972.  The Commissioner's primary consideration in determining whether a particular activity

14   constitutes SGA is whether the earnings that the claimant derived from that activity fall above or

15   below the minimum amount established by the Commissioner's Earnings Guidelines.  *Id.*  §§

16   404.1572(a), 416.972(a); *see also* www.ssa.gov/oact/COLA/sga.html (defining minimum monthly

17   earnings for SGA).  Where the claimant's average monthly earnings meet or exceed the minimum

18   amount, the burden of proof shifts to the plaintiff to show that his work was not SGA.[2]  *See* Lewis

19   v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001); 20 C.F.R. §§ 404.1574(b)-(d), 416.974(b)-(d).

20   Accordingly, if the plaintiff introduces no such evidence, the ALJ may find that the claimant has

21   engaged in SGA.  Lewis, 236 F.3d at 515.  Where the claimant earned less than the minimum

22   monthly amount set by the Commissioner, the ALJ may still determine that plaintiff engaged in

23   _____

24        [2]       There are three types of work that do not constitute SGA:  work that constitutes an
     "unsuccessful work attempt," discussed *infra*; work performed in certain volunteer programs
25   administered by the Federal government; and work activity performed as a member or consultant
     of an advisory committee established under the Federal Advisory Committee Act.  20 C.F.R. §§
26   404.1574(c)-(e), 416.974(c)-(e).  In addition, a claimant can rebut the earnings presumption with
     evidence that, *inter alia*:  the work was not demanding and had no more than minimal value to
27   the claimant's business or employer; the claimant was unable to perform the work adequately
     without more supervision or assistance than is usually provided; or the work was performed
28   under, or could no longer be performed upon the removal of, special conditions that were related
     to the claimant's impairment.  See 20 C.F.R. §§ 404.1573, 416.973.

1   SGA but must justify that decision with specific findings supported by substantial evidence.  *See*

2   Lewis, 236 F.3d 503, 515 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1574(b)(3)(ii),

3   416.974(b)(3)(ii) (outlining when the ALJ may consider other information in addition to earnings

4   to determine whether a claimant engaged in substantial gainful activity despite falling below the

5   presumptive gainful activity level).

6

7       A.      The ALJ Erred In Finding That Plaintiff's Work As A Companion Constituted

8               Substantial Gainful Activity.

9

10      Here, plaintiff's earnings record shows that he received $1,504.11 in 2006, and $1,113.29

11  in 2005, in IHSS (In Home Supportive Services) payments for working as his brother's companion

12  (A.R. 161, 162), and plaintiff testified that he worked in this capacity for six months (*id.* 50).

13  Accordingly, plaintiff's average monthly earnings as a home health care companion were

14  $436.23/month  ($1,504.11 +$1,113.29 = $2,617.40 and $2,617.40 ÷ 6 = $436.23 per month).

15  This falls well below the minimum earnings of $830/month and $860/month that presumptively

16  constituted SGA in 2005 and 2006 respectively, and, thus, the ALJ was not permitted to treat

17  plaintiff's home health care companion work as SGA without first making specific findings about,

18  *inter alia*, the nature, quality, and conditions of plaintiff's work in this capacity.  *See* Lewis, 236

19  F.3d at 515 (listing the five factors to be considered in determining whether the claimant's work

20  was SGA); *see also* 20 C.F.R. 20 C.F.R. §§ 404.1573, 416.973; www.ssa.gov/oact/COLA/sga.html

21  (setting the minimum amounts for SGA in 2005 and 2006 at $830/month and $860/month

22  respectively).

23

24      The ALJ failed to acknowledge the fact that plaintiff's average monthly earnings as a

25  companion fell below the threshold amount for SGA before characterizing plaintiff's work as a

26  companion as past relevant work. (*See generally* A.R. 21.)  Accordingly, the ALJ did not satisfy

27  his duty to make specific findings supported by substantial evidence before treating plaintiff's

28  companion work as substantial gainful activity.  *See* Lewis, 236 F.3d at 515.

1    However, the ALJ's error is harmless because, as explained below, he did not err in finding

2    that plaintiff's work as a landscape laborer was SGA and, thus, past relevant work for the purpose

3    of step four of the analysis.  As a result, the ALJ's error regarding plaintiff's companion work was

4    inconsequential to the ultimate nondisability determination.  *See* Carmickle, 533 F.3d at 1162.

6    B.    The ALJ Did Not Err In Finding That Plaintiff's Work As A Landscape Laborer

7          Constituted Substantial Gainful Activity.

9    Plaintiff also contends that the ALJ erred in classifying his work as a landscape laborer,

10   which he performed as an independent contractor, as past relevant work, because it too did not

11   constitute substantial gainful activity.  Plaintiff argues that his work as a self-employed landscape

12   laborer is excluded from the definition of SGA, because it was an "unsuccessful work attempt."

13   (*See* Joint Stip. at 9 (citing 20 C.F.R. §§ 404.1575(a)(2), (d))); *see also* 20 C.F.R. §§ 404.1574(c),

14   416.94(c); Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1221 n.1 (9th Cir. 2009) (agreeing that

15   the claimant's unsuccessful work attempt did not amount to SGA and, thus, could not be

16   considered past relevant work under the regulations).

18   Plaintiff's earnings records show that he reported earning a total of $9,062 from self-

19   employment in 2009, and $8,773 from self-employment in 2010.  (A.R. 161-62.)  Plaintiff

20   identifies no source of self-employment income during those years other than his work as a

21   landscape laborer.  (*See generally id.* 31-50 (hearing testimony), 193-204 (plaintiff's work history

22   report); Joint Stip. at 5-10, 1-18.)  He testified that he worked in this capacity from "maybe about

23   the end of 2009," until "maybe around June [2010]" when he stopped because of his back

24   conditions and the side effects of his medications.  (A.R. 33, 34, 44.)  It is difficult to reconcile

25   plaintiff's reported self-employment income of $9,062 in 2009, and $8,773 in 2010, with plaintiff's

26   testimony that he worked as a self-employed landscape laborer for no more than a month in 2009

27   and no more than six months in 2010.  As the ALJ indicated at the hearing, if plaintiff is believed,

28   he was paid a "princely sum" for his part-time lawn care work.  (A.R. 49.)  Nevertheless, the Court

7

1  does not need not assess plaintiff's credibility in order to find that the ALJ did not err in treating

2  plaintiff's landscaping work as SGA.

3

4      When a claimant is self-employed, the question of whether his work constitutes SGA

5  depends on his "activities and their value" to his business regardless of whether the claimant

6  received an immediate income for his services.  20 C.F.R. §§ 404.1575(a), 416.975(a).  There are

7  three tests for determining whether a self-employed claimant's work constitutes SGA.  Under the

8  first, a claimant's self-employment constitutes SGA if he rendered services that are significant to

9  the operation of the business and, after the deduction of any business expenses, received a

10 substantial income from that business, *i.e.*, an income in excess of the minimum amount for SGA

11 by non-self-employed individuals.  *Id.* §§ 404.1575(a)(2)(i), (c), 416.975(a)-(c).  A claimant's

12 services are significant to the operation of his business when, as here, he operates the business

13 entity entirely by himself.  *Id.* §§ 404.1575(b)(1), 416.975(b).

14

15      There is no question that plaintiff's work as a self-employed landscape laborer satisfied his

16 first test for SGA.  He, as his sole employee, rendered significant services to the operation of his

17 business, *see* 20 C.F.R. §§ 404.1575(b)(1), 416.975(b), and he received a substantial income of

18 nearly $3,000/month, well over the $980 and $1,000 per month that constituted SGA in 2009, and

19 in 2010, from that business.  *See* www.ssa.gov/oact/COLA/sga.html.  Plaintiff does not claim that

20 he incurred any expenses or received a significant amount of unpaid help that should be deducted

21 from his reported income for the purposes of determining whether it was substantial.  (*See* Joint

22 Stip. at 9-10); *see also* 20 C.F.R. §§ 404.1575(c), 416.975(c).  Instead, he claims that his

23 landscape work was not SGA, because it was an "unsuccessful work attempt."

24

25      A period of work constitutes an unsuccessful work attempt if it satisfies three requirements.

26 First, the claimant must have experienced a significant break in the continuity of his work before

27 the work attempt.  20 C.F.R. §§ 404.1575(d)(2), 416.975(d)(2).  Second, if the claimant's work

28 attempt lasts between three and six months (as plaintiff claims his did), it must end, or be

8

reduced below the substantial gainful activity earnings level, because of either the claimant's impairment or the removal of special conditions which took into account his impairment. *Id.* §§ 404.1575(d)(4), 416.975(d)(4). Third, one of the following four additional four factors must also be satisfied:

> (i) The claimant was frequently absent from work because of his impairment;
>
> (ii) The claimant's work was unsatisfactory because of his impairment;
>
> (iii) The claimant worked during a period of temporary remission of his impairment; or
>
> (iv) The claimant worked under special conditions that were essential to his performance and these conditions were removed.

*Id.*

Here, plaintiff did not present any evidence or testimony to suggest that he satisfied the third requirement. He did not indicate that, as a result of his impairment, he was frequently absent from work or performed unsatisfactory work. He did not allege that he worked during a period of temporary remission of his impairment. He did not claim that he worked under special conditions that were essential to his performance and these conditions were removed. Even now, plaintiff makes none of these assertions, premising his argument solely on the grounds that he "stopped working within six months because of his severe medical impairment." (*See generally* Joint Stip. at 9-10.) Accordingly, plaintiff did not carry his burden of establishing that, despite his average monthly earnings of nearly $3,000, his landscape work did not constitute SGA, and the ALJ did not err in treating plaintiff's landscape work as past relevant work at step four of the analysis.

1    **II.    The ALJ Properly Evaluated The Credibility Of Plaintiff's Testimony.**

2

3            The second issue in dispute is whether the ALJ properly credited plaintiff's testimony about

4    the severity and limiting effects of his symptoms.  (Joint Stip. at 19-30.)  Plaintiff appeared at the

5    hearing with a cane and testified that he "can't do too much standing," "can't sit long," and takes

6    medications that prevent him from "doing a lot of bending."  (A.R. 34-35.)  He testified that he:

7    could stand for five minutes at a time with the help of the cane and his medication (*id.* 35); could

8    sit for 20 minutes at a time (*id.* 36); and took out the trash and washed the dishes at home (*id.*

9    36).  Plaintiff now contends that his testimony established that his impairments were disabling and

10   left him with only a "sporadic and limited ability to perform daily activities" (*see* Joint Stip. at 21-

11   24) and that the ALJ rejected his testimony without articulating a sufficient rationale (*id.* at 21).

12

13           An ALJ must make two findings before determining that a claimant's pain or symptom

14   testimony is not credible.  <u>Treichler v. Comm'r of Soc. Sec.</u>, __ F.3d __, No. 12-35944, 2014 WL

15   7332774, at *9 (9th Cir. Dec. 24, 2014).  "First, the ALJ must determine whether the claimant has

16   presented objective medical evidence of an underlying impairment which could reasonably be

17   expected to produce the pain or other symptoms alleged."  *Id.* (quoting <u>Lingenfelter</u>, 504 F.3d at

18   1036).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that

19   the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for

20   rejecting the claimant's testimony regarding the severity of the claimant's symptoms."  *Id.*

21   "General findings are insufficient."  *Id.* (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir.

22   1995)).

23

24           Here, the ALJ determined that plaintiff's medically determinable impairments could

25   reasonably be expected to cause the alleged symptoms but identified clear and convincing reasons

26   for finding that plaintiff's statements regarding the intensity, persistence, and limiting effects of

27   these symptoms were not credible.  (A.R. 19-20.)  First, the ALJ explained that plaintiff's

28   subjective testimony was unsupported by the objective medical evidence.  He noted that there

10

was no medical opinion supporting plaintiff's asserted limitations on sitting, standing, and walking. (*See id.* 19-20.)  Soheila Benrazavi, M.D., a board certified internist, examined plaintiff and found that he could stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. (*Id.* 308.)  A second examining physician, Concepcion A. Enriquez, M.D., a board eligible internist, also found that plaintiff could stand and/or walk with normal breaks for six hours in an eight-hour workday and sit with normal breaks for six hours in an eight-hour workday. (*Id.* 390.)  The non-examining medical consultant, P.N. Ligot, M.D., internist, also found that plaintiff could stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. (*Id.* 312.)  All three physicians also found that plaintiff could carry 50 pounds occasionally, 25 pounds frequently, and could perform medium work. (*Id.* 20, 308, 312, 390.)  Second, the ALJ cited the discrepancy between plaintiff's testimony that he needed a cane to walk or stand and his demonstrated ability at his 2010 examination with Dr. Benrazavi and his 2011 examination with Dr. Enriquez to walk without an assistive device. (*Id.* 19, 307, 390.)  Third, the ALJ observed that plaintiff did not exhibit disabling limitations at the hearing. (*Id.* 20.)  To the contrary, plaintiff was able to enter and exit the hearing room without difficulty. (*Id.*)

Plaintiff contends that the ALJ erred in relying on the objective medical evidence and his personal observations of plaintiff as reasons for rejecting plaintiff's subjective symptom testimony. (*See* Joint Stip. at 22-27.)  An ALJ may not rely *solely* on the objective medical evidence or his personal observations of the claimant as the basis for discrediting the claimant.  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (Commissioner may not reject a claimant's statements about the intensity, persistence, or limiting effects of his symptoms "solely because the available objective medical evidence does not substantiate [his] statements"); Orn, 495 F.3d at 639-40 (ALJ's personal observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony).  However, when considered in combination with other factors, both the objective medical evidence and an ALJ's personal observations of the claimant are proper reasons for finding that the plaintiff is not credible.  *See* 20 C.F.R. §§ 404.1529(c)(2), (4), 416.929(c)(2), (4) (a claimant's statements about the intensity, persistence, or limiting effects of his symptoms

are evaluated "in relation to the objective medical evidence," which provides a "useful indicator" or the severity and effect of his symptoms); Orn, 495 F.3d at 639-40 (an ALJ's personal observations of the claimant's functioning "may be used only in the overall evaluation of the credibility of the individual's statements").

Here, the ALJ's evaluation of plaintiff's credibility was not limited to the objective medical evidence and his personal observations of plaintiff's functioning at the hearing. He also identified an inconsistency between plaintiff's testimony and his prior conduct -- namely, his ability to walk without an assistive device during his examinations by Dr. Benrazavi and Dr. Enriquez. (A.R. 19); cf. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (identifying inconsistencies between a claimant's testimony and actions is a proper reason for discrediting him). In Verduzco, the Ninth Circuit upheld an ALJ's adverse credibility determination based partly on the fact that, although the claimant appeared at the hearing with a cane, none of his doctors had ever indicated that he needed one to walk, and two doctors had specifically noted that he did not need such a device. 188 F.3d at 1090. Those facts are similar to the situation here and support the ALJ's determination that plaintiff's testimony about his disabling limitations was not entirely credible.

The other two reasons the ALJ cited were not sufficient individually to support the ALJ's adverse credibility determination but are clear and convincing in the context of the ALJ's assessment as a whole. Plaintiff provided no medical evidence or opinion to support his testimony that he can only stand for five minutes at a time and sit for 20 minutes at a time. To the contrary, every examining physician to express an opinion on the subject found that plaintiff could: perform medium work, which would include carrying 50 pounds occasionally and 25 pounds frequently; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and walk with a normal gait. (A.R. 307-08, 390.) Thus, the ALJ's observation that plaintiff was able to enter and exit the hearing room without difficulty is consistent with the objective medical evidence and with plaintiff's conduct during his examinations with the consulting internists and, therefore, provides a third clear and convincing reason for discrediting plaintiff's testimony about

1   limiting effects of his impairments.

2

3       Plaintiff has not presented any evidence, beyond his own self-serving statements, that
4   corroborates his subjective pain testimony. (*See generally* Joint Stip. at 19-30.)  Furthermore,
5   although the ALJ did not discuss it in his decision, the record shows that plaintiff's statements
6   about his symptoms, medical history, and work experience have often been inconsistent with his
7   prior statements and/or with the objective evidence in the record.  For example, although plaintiff
8   testified at the hearing that he had worked as a self-employed landscape laborer in 2009 and
9   2010, in February 2010, while still working in that capacity, he told Dr. Benrazavi that he had not
10  worked since 2008. (A.R. 305.)  He made the same false statement to Dr. Enriquez and Dr. Carlos
11  Jordan-Manzano, a board eligible psychiatrist, a year later.  (*Id.* 388, 394).  Plaintiff also
12  misrepresented his work history on his applications for DIB and SSI (*id.* 142, 146), and his onset
13  date had to be amended once it became clear that he had continued to work past his alleged
14  onset date of August 1, 2009. (*See id.* 50.)  Plaintiff also told the ALJ that he saw someone "at
15  mental health" for his depression (*id.* 38), but the records from the Department of Mental Health
16  show that he was never seen by any department of the Mental Health Program.  (*Id.* 452; *see also*
17  *id.* 449 (plaintiff was never seen at this outpatient clinic).)  Finally, plaintiff testified that he could
18  only stand for five minutes at time, but in his daily activities questionnaire he stated that he could
19  walk for 20 minutes before experiencing pain or discomfort. (*Compare id.* 35 *with id.* 177 (plaintiff
20  writes that he experiences lower back pain and shortness of breath after walking for about 20
21  minutes).)  Because the ALJ did not cite these inconsistencies as grounds for his adverse
22  credibility determination, the Court does not consider whether they would be proper reasons for
23  rejecting plaintiff's subjective symptom testimony.  *See* Bray, 554 F.3d at 1225 ("Long-standing
24  principles of administrative law require us to review the ALJ's decision based on the reasoning and
25  factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the
26  adjudicator may have been thinking.").  Nevertheless, these inconsistencies strongly suggest that
27  plaintiff was not forthright with either the consulting medical sources or the representatives of the
28  Social Security Administration.

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 3, 2015

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

14